## Winsor *et al.* *versus* Maddock *et al.*

| 64 | 231 |
| 194 | 71 |

1. Points need not be separately noticed if they are substantially and clearly met and answered in the general charge.

2. A party cannot complain of a refusal, if the proper answer would have done him no good.

3. The owners of a ship, though in a home port where they or their agents reside, are responsible for necessary supplies furnished on the order of the captain, unless it should appear that they were furnished exclusively on his credit.

4. Supplies, during three years were furnished for a ship, on the order of the captain; no demand had been made on the owners for their payment until fifteen months after the last item. From these circumstances alone there could be no inference that exclusive credit had been given to the captain.

February 11th 1870. Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 115, to July Term 1869.

This was an action of assumpsit by Edward J. Crippen and John B. Maddock, trading as William L. Maddock & Co., against Henry Winsor and William D. Winsor, owners of the steamship "Saxon."

The ship was one of a line between Philadelphia and Boston, which carried passengers as well as freight. The claim was for groceries, such as would be suitable for passengers. It was alleged by the defendants that the goods were furnished on the individual credit of Captain Matthews, the master of the ship, and not on the credit either of the ship or her owners; and that the captain only, and not the ship or its owners, was only liable. The Saxon belongs to the Boston Steamship Line, of which the defendants are agents and part owners. The landing-place of the steamers is Pine street wharf, and the office of the line is on Delaware Avenue, at the corner of Pine street.

The plaintiffs gave in evidence the account in their books, in which the heading was, "Steamship Saxon and Owners." Also a pass-book, endorsed on both covers, "St. Ship Saxon and owners in account with William L. Maddock & Co.;" with a similar entry on the head of the first page. The book contained a running account of articles furnished from May 1863 to May 1866; also credits of cash and merchandise, showing the balance due May 16th 1866, to be $473.52. The book was brought from time to time to the plaintiffs' store by the steward of the ship, the items were entered in the pass-book, which was delivered to the ship with the goods; the goods were taken to the ship in the plaintiffs' wagon, which had their names on it in large letters. The plaintiffs gave other evidence to maintain their case.

The defendants called Captain Matthews, who testified: He told

[Winsor *v.* Maddock.]

one of the plaintiffs when he made arrangements for dealing with them, that he got so much per month for victualling the ship, and he was to get the things where he could do best; the plaintiffs made out the pass-book themselves and gave it to the steward; the goods were furnished on witness's account, and *he* was indebted to the plaintiffs for the balance; he informed the plaintiffs when his arrangement with the defendants ceased, and that thereafter their bills must be sent to Henry Winsor & Co. Witness was owner of a sixteenth of the ship in 1862, when the contract was opened; he transferred his interest in the same year.

·The steward testified that he informed the plaintiffs that the captain was victualling the vessel.

Henry Winsor, one of the defendants, testified, that their contract with the captain was to pay him $600 per month for victualling the ship and $5 on each passenger; the captain bought the supplies on his own credit where he chose, and all that was due to him had been paid. The plaintiffs never made any demand on the defendants for payment until August 1867; they had never seen the plaintiffs or their clerk, or known anything of the bill until that time.

The witness further said: " Our captains sometimes purchased some things for the vessel. We generally consulted the captain about the purchases for the vessel of things in which he was most competent as captain to advise, such as rigging, boats, &c. When he bought such things the bills were sent to the office. The bills were generally made out so, ' Steamship Saxon and Owners,' to distinguish them from purchases made for the other vessels on the line. The general accounts of the line are kept at Boston. After January 1866, we found out that Captain Matthews was doing badly, not paying his bills; we required him to pay them monthly. They were paid at the office by the book-keeper, and charged to him. They continued to be so until he left us."

The plaintiffs, in rebuttal, gave evidence for the purpose of showing that they had sold the goods on the credit of the ship and the owners, and had never given credit to Captain Matthews individually; and also to show that the captain's and steward's statements on this point were inaccurate.

The defendants submitted these points:—

1. The captain of a steamship engaged in a regular established coastwise transportation line between this port and Boston, has no authority presumable solely from his position as captain, to bind the owners of such steamer for supplies purchased by him for the passengers and crew of such steamer, in her home port, where her owners and regularly constituted and advertised agents are resident.

2. If the plaintiffs had knowledge that the defendants were the agents of the steamship Saxon in Philadelphia, her home port,

and managed the affairs of such vessel, then the presumption of the captain's authority as agent of the owners is rebutted, and the plaintiffs are not entitled to recover without proof of express authority of the captain to pledge the credit of the owners for the supplies in question in this suit.

3. Proof that the defendants had been well known to the public in this city for a long period as the agents of the Boston Steamship Line, which line the steamer Saxon performed regular trips since the year 1861, and were regularly advertised in the newspapers as such agents, is evidence of the knowledge of such fact by the plaintiffs.

4. If the jury believe that after the plaintiffs furnished the supplies sued for upon the order of the captain, the plaintiffs permitted a long time to elapse without demanding payment of the defendants, or notifying them of the delinquency of the captain in failing to pay, and thus allowed the defendants to settle with the captain, as if the bills had been duly paid by the captain, such delay upon the part of the plaintiffs is evidence that they gave exclusive credit to the captain, and will operate to discharge the defendants.

5. If the jury believe that the plaintiffs had knowledge of the agreement between the captain and owners concerning the victualling of the steamer, that the captain should purchase such supplies upon his own account and credit in the best market, receiving therefor a certain stipulated sum, then the plaintiffs could not charge the said supplies to the defendants, and cannot recover in this action.

6. If the jury believe, from the whole of the evidence in the cause, that these supplies were furnished upon the credit of the captain, the defendants are not liable.

The court, Stroud, J., did not answer the points specifically, but charged:—

* * * " It is in evidence that besides being captain of the vessel, Matthews was also a part owner. The articles furnished are not what are called *sea stores*, for a particular voyage, but consist of numerous small articles chiefly furnished for victualling, even to a few pounds, and I believe to a single pound.

[" Supposing that the captain was also a joint owner with the defendants, who are sued as *owners*, and that no special information had been given to the plaintiffs as to any particular arrangement between the captain and the defendants, as to whom the obligation of payment existed, I think the law would make the defendants, as owners, liable jointly with the captain for the plaintiffs' claim.]

" But if the plaintiffs had been informed at the commencement of the dealing for supplies, that there was an arrangement between the captain and the defendants, by which the captain was to pur-

[Winsor *v.* Maddock.]

chase supplies on his own responsibility only, the defendants would not be liable.

"It is important, therefore, that the jury should look carefully into the evidence on this topic.  Captain Matthews says he made the communication as to his individual responsibility, and did it at the outset of the dealing for supplies." * *

The verdict was for the plaintiffs for $556.93.

The defendants took a writ of error, and assigned for error in their first six specifications the neglect of the court to answer their points, and the part of the charge enclosed in brackets.

*J. B. Thayer*, for plaintiffs in error.—In a home port, where his owners are resident, a master has no implied authority to pledge the credit of his owners, even for supplies furnished to the vessel: Abbott on Shipping 132 ; Maud & Pollock on Merchant Shipping 102 ; McLaughlin on Merchant Shipping 128, 131 ; Arthur *v.* Barton, 6 Meeson & Welsby 138.  The master cannot bind his owners for supplies when it is known to the creditor that some other person has authority to manage the business of the vessel: The Barque Joseph Conrad, Olcott's Rep. 125 ; Phillips *v.* Ledley, 1 Wash. C. C. R. 226.  This is not altered because the captain was at the inception of the contract a joint owner, if he was not the agent of the line for such purpose : Maud & Pollock on Merchant Shipping 56, 57, 70 ; Holt on Shipping 33 ; Brodie *v.* Howard, 17 C. B. 109 ; Heppard *v.* Brig General Cadwalader, 6 Penna. Law Jour. 474.  If the creditor voluntarily gives an enlarged credit to the agent of the debtor, or adopts a particular mode of payment by which the principal is placed in a worse situation than he otherwise would have been, the original debtor is discharged : Paley on Agency 251–253 ; Story on Agency 515 ; Wyatt *v.* The Marquis of Hertford, 3 East 147 ; Smith *v.* Ferrand, 7 B. & C. 19 ; Reed *v.* White, 5 Espinasse 122 ; Stewart *v.* Hall, 2 Dow R. 29 ; McLaughlin on Merchant Shipping 105 ; Abbot on Shipping 106 (and note); Muldon *v.* Whitlock, 1 Cowen 290 ; Cheever *v.* Smith, 15 Johns. R. 277 ; Chapman *v.* Durant, 10 Mass. 47 ; Pentz *v.* Stanton, 10 Wend. 271.  As to the court neglecting to answer the points : Garrett *v.* Gonter, 6 Wright 143 ; Caldwell *v.* Holler, 4 Id. 160 ; Walker *v.* Humbert, 5 P. F. Smith 407 ; Torrance *v.* Torrance, 3 Id. 505 ; Mullen *v.* Wilson, 8 Wright 413 ; McKnight *v.* Radcliff, Id. 166 ; Penna. Railroad Co. *v.* Zebe, 9 Casey 318 ; Wheeler *v.* Winn, 3 P. F. Smith 122.

*S. Dickson*, for defendants in error.—As the master is the confidential agent of the owners, he has an implied authority to bind them, without their knowledge, by contracts relative to the usual employment of a general ship: Story on Agency, § 119 ; Phil-

[Winsor v. Maddock.]

lips v. Ledley, 1 W. C. C. 226; 3 Kent Com. 161; Phillips v. Tapper, 2 Barr 323; Blackstock v. Leidy, 7 Harris 335; Lincoln v. Wright, 11 Id. 76; Stedman v. Feidler, 20 N. Y. 437; Glading v. George, 3 Grant 290; 3 Kent 153–155; Patterson v. Chalmers, 7 B. Mon. 595; Sawyer v. Freeman, 35 Maine 542; King v. Lowry, 20 Barb. 532; Story on Agency, § 40.

The opinion of the court was delivered, February 17th 1870, by SHARSWOOD, J.—It has been often decided in this court that it is not necessary that points should be separately noticed, if they are substantially and clearly met and answered in the general charge, and that a party has no right to complain of a refusal if the proper answer would have done him no good. We had occasion to reconsider and reaffirm these principles in Patterson v. Kountz, 13 P. F. Smith 246, to the opinion in which we refer for a more full discussion and citation of authorities.

It must now be considered as settled in this state by the case of Glading v. George, 3 Grant's Cases 290, that the owners of a ship, though in a home port where they or their agents reside, are responsible for necessary supplies furnished on the order of the captain, unless it should appear that they were so furnished exclusively on his credit. There was no error then in the refusal or neglect of the learned judge below to answer the points presented by the defendants which form the subjects of the first three assignments of error. The only proper answer would have been a negative one to each of them, and that would have been of no advantage to the plaintiffs in error. As to the fourth error assigned, which appears to be the principal ground of complaint, the want of any answer either specifically or in the charge to the defendants' fourth point, the same remark is applicable. For certainly the neglect of the plaintiffs below to demand payment of the defendants, unless the fact was that they knew of an arrangement under which the captain was paid a certain sum to procure supplies—a fact not hypothetically stated in the point—would be no evidence from which the jury could have legitimately inferred that exclusive credit was given to him. The fifth and sixth points were distinctly answered in the charge when the jury were instructed that "if the plaintiffs had been informed at the commencement of the dealing for supplies, that there was an arrangement between the captain and the defendants by which the captain was to purchase supplies on his own responsibility only, the defendants would not be liable." That portion of the charge complained of in the seventh assignment of error is but a reiteration in substance of the same instruction. Indeed when we advert to the evidence of Henry Winsor, one of the defendants, the case was submitted to the jury as favorably for them as they could ask

or expect: for he testified that "when he (the captain) bought such things the bills were sent to the office. The bills were generally made out so, "Steamship Saxon and Owners," to distinguish them from purchases made for the other vessels on the line." With full knowledge then that the plaintiffs were charging the supplies furnished by them in this manner, without any objection on their part, there was not only no evidence that they were sold to the captain exclusively on his credit, but direct evidence brought home to the knowledge of the defendants at the time, that they were sold on the credit of the ship and her owners.

Judgment affirmed.